

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN JORDAN,          :
    Plaintiff
                                                   :

    vs.                            :    CIVIL ACTION NO. 1:CV-00-1387

                                                  :

ROBERT W. MEYERS,
Superintendent, et al.,      :
    Defendants

M E M O R A N D U M

FILED
HARRISBURG, PA

FEB 1 4 2003

MARY E. D'ANDREA, CLERK
Per _____
       Deputy Clerk

I.    *Introduction.*

    The defendants have filed a motion for summary judgment and the plaintiff a motion for partial summary judgment. The pro se plaintiff, Shawn Jordan, an inmate at SCI-Rockview, Bellefonte, Pennsylvania, filed this action as a conditions-of-confinement claim under the Eighth Amendment. He alleged that the defendant prison officials housed him where he was exposed to harmful levels of environmental tobacco smoke (ETS), usually known as secondhand smoke, that caused him to develop asthma, and then worsened it. He has sued Jeffrey Beard, the Secretary of the Pennsylvania Department of Corrections; Martin Horn, the former secretary of the department; Robert Myers, Rockview's superintendent; and nine other prison officials at Rockview.

We will evaluate the parties' motions under the well established standard. *See Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231, 234 (3d Cir. 1999).

II.  *Background*.

   A.  *The Amended Complaint*.

Plaintiff's amended complaint, filed February 7, 2001, alleged as follows, in pertinent part. Plaintiff is housed on D Block. On May 20, 1994, the Department issued a policy, effective August 22, 1994, allowing smoking in prison facilities. Jordan has never smoked, but as a result of the policy, "he is being exposed to high levels of environmental tobacco smoke, 'E.T.S,'" (amended complaint, ¶ 3), and has developed asthma, forcing him to use an inhaler. (*Id.*, ¶ 4). D Block has poor ventilation which adds to the high level of ETS. (*Id.*, ¶ 5). Plaintiff avers that he has always been placed in housing areas where smoking has been permitted.

On July 22, 2000, he wrote to various prison officials, requesting that he be moved to a nonsmoking block. Some did not respond and at least one told him that while a transfer was not a medical necessity, he could submit a request to be moved, but to direct it to another official.

Jordan averred that Defendants' treatment of him violated the Eighth Amendment. He sought declaratory and

2

injunctive relief. His request for injunctive relief included an order requiring Defendants to move him to a nonsmoking block, prohibiting smoking in all buildings, and banning the sale of smoking products in the prison. Plaintiff also sought compensatory damages for physical and mental suffering and for the expense of future medical care.

B.  *The Summary-Judgment Background.*

The following is the background for the summary-judgment motions, based on the parties' respective statements of material fact, the responses to the statements or the lack of responses, and other evidentiary submissions.

Plaintiff has asthma. He believes that he did not have the disease until he was imprisoned at Rockview in January 1991. (Doc. 78, Plaintiff's penalty-of-perjury declaration, ¶ 1). Conversely, Defendants assert that documents completed when he was admitted to Rockview show that he did have the disease before entering the prison. (DSMF 2; doc. 85, Ellers' penalty-of-perjury declaration, ¶ 4).[1]

According to John Symons, M.D., Rockview's medical director, who reviewed Jordan's medical records, Jordan has been prescribed two inhalers for his asthma, Albutirol and Vanceril, to be used as needed. Jordan is not considered a problematic

---

[1] "DSMF" stands for "Defendants' Statement of Undisputed Material Facts."

3

asthmatic nor is his condition considered life-threatening or severe. (Doc. 85, attachment C, Dr. Symons' penalty-of-perjury declaration).

Dr. Symons opines as follows. First, Jordan's asthma does not require his confinement in a nonsmoking environment. (DSMF 6).[2] Second, it cannot be said that Jordan's asthma was caused by secondhand smoke. (DSMF 8).

Before December 22, 2001, Jordan was in D Block for ten months. At some point during that time, he was in administrative custody and then the restricted housing unit. He was on D Block from December 22, 2001, until he was transferred to BB Block in May of 2002. (DSMF 10; Plaintiff's response thereto). Defendants maintain that there are windows in the D Block cells that can be opened manually. (DSMF 12, Doc. 85; Walls' penalty-of-perjury declaration, ¶ 4). For ventilation, there were also three large floor fans and four very large ceiling fans. (DSMF 13; Walls' penalty-of-perjury declaration, ¶ 5). To the contrary, Plaintiff asserts that there were no windows in the D Block cells and no ceiling fans. (Doc. 78, ¶ 4; doc. 84, ¶ 2).

Jordan is classified as Z-Code, meaning he must be single-celled; he never had a cell mate while he was in D Block. (DSMF 11). When he was transferred to BB Block on May 16, 2002,

---

[2] Plaintiff disputes this assertion but provides no evidence to the contrary, except that some unnamed physician or medical director told him that he should be housed in a nonsmoking unit. (Doc. 78, ¶ 2).

4

he was single-celled, and he remains in a single cell to this day. There are no plans to change that status. (DSMF 16-19).

The windows in Jordan's cell in BB Block are functional and can be opened. (DSMF 20). Ventilation in BB Block is accomplished by two large floor fans and exhaust fans affixed to the ceiling which operate at all times. (DSMF 21).

Plaintiff is enrolled in the prison's asthma clinic and is seen there every three months. At the time of the summary-judgment motions, he was last seen at the clinic on June 13, 2002. At that time, he reported he was not using one of his inhalers. Jordan's medical records reveal that he appears for his scheduled visits and has not had a sick call visit concerning his asthma. The records contain no entry by a physician or other medical provider that he requires a smoke-free environment[3] or that his asthma condition was caused by secondhand smoke. (DSMF 24-30; doc. 84, Ellers' penalty-of-perjury declaration, ¶¶ 5-10).

As part of his summary-judgment submissions, Plaintiff supplied the Rockview Smoking Policy, effective August 22, 1994, that he referred to in his amended complaint. See doc. 62, section D. In Part II of the policy, captioned "Purpose," it is

---

[3] Plaintiff disputes this by asserting that unidentified doctors have told him they are not allowed to make entries in the medical records related to housing units or nonsmoking inmates, but he provides no evidence to buttress this assertion or that he could produce such evidence at trial. For the same reason, we attach no probative value to his assertion that an unnamed physician or medical director told him that he should be housed in a nonsmoking unit. See doc. 78, ¶ 2.

5

noted that the policy is intended to foster the health and safety of all, recognizing that smoking poses a significant risk to smokers and nonsmokers. In later pages, the policy bars smoking by anyone in certain areas, but apparently not in the inmate housing areas. Later policies revised this one. In a policy effective, July 31, 2000, smoking was barred from, among other areas, the common areas of BB Block, and smoking was totally barred in some housing units. The Department then issued a policy statement, effective December 4, 2000, for all state prisons, requiring the prisons to attempt to honor an inmate's smoking preference in housing assignments.

As the final policy, after smoking was banned in the common areas of BB Block, (DSMF 22), beginning on November 1, 2002, SCI-Rockview barred all prisoners from smoking while in prison or purchasing tobacco products there.

III. *Discussion*.

Plaintiff's amended complaint claims a violation of the Eighth Amendment because of his exposure to ETS. The Eighth Amendment, which bars the imposition of cruel and unusual punishment on imprisoned individuals, prohibits the unnecessary and wanton infliction of pain. *Ingraham v. Wright*, 430 U.S. 651, 669-70, 97 S.Ct. 1401, 1411-12, 51 L.Ed.2d 711 (1977). *Accord Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). The Amendment has both an objective and

subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991).

The objective component, whether the wrongdoing is harmful enough to establish a constitutional violation, is both "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). In the context of the prison environment, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* at 9, 112 S.Ct. at 1000. Part of the penalty facing those who violate the norms of society is routine discomfort. *Id.*, 112 S.Ct. at 1000. The eighth amendment does not require that inmates be provided with comfortable prisons. *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981); *Loe v. Wilkinson*, 604 F. Supp. 130, 133-34 (M.D. Pa. 1984).

The subjective component is met if the persons causing the deprivation acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298, 111 S.Ct. 2324. The legal malice required to satisfy the subjective component of an eighth amendment claim is not present unless the defendants' conduct involved unnecessary and wanton infliction of pain. *Id.*, 111 S.Ct. at 2324. Wantonness "does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.'"

7

*Id.* at 302, 111 S.Ct. at 2326 (quoting *Whitley*, 475 U.S. at 320). An inmate must demonstrate that a prison official was deliberately indifferent to the conditions of his confinement. *Id.* at 303, 111 S.Ct. at. 2326-27. In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court described the standard for determining deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837, 114 S.Ct. at 1979.

In *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the Court dealt specifically with an Eighth Amendment claim based on ETS. In that case, the inmate-plaintiff claimed that the Eighth Amendment was violated when he was placed in a cell with an inmate who smoked five packs of cigarettes a day. The plaintiff had not yet suffered injury as a result, but the Court stated that he could prevail on his claim if he established the following. With regard to the objective component of the Eighth Amendment, he had to show two things; first, that he was being "exposed . . . to levels of ETS that pose an unreasonable risk of serious damage to his future health," *id.* at 35, 113 S.Ct. at 2481; second, that the risk was "so grave that it violates contemporary standards of decency to expose *anyone*

unwillingly to such a risk." *Id.* at 36, 113 S.Ct. at 2482 (emphasis in original). The Court added in connection with the latter factor: "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.*, 113 S.Ct. at 2482. With regard to the subjective component of deliberate indifference, deliberate indifference "should be determined in light of the prison authorities' current attitudes and conduct," *id.*, 113 S.Ct. at 2482, with the Court noting that "the adoption of [a] smoking policy . . . bear[ing] heavily on the inquiry into deliberate indifference." *Id.*, 113 S.Ct. at 2482.

In moving for summary judgment on any claim for existing injury, Defendants argue in part that Plaintiff's claim fails because he has no expert testimony that his asthma requires a smoke-free environment or that the ETS level in D Block caused or worsened his asthma. In support, they cite *Oliver v. Deen*, 77 F.3d 156, 160 (7th Cir. 1996)(noting the lack of evidence establishing that the smoke had caused the plaintiff's distress).

We agree and believe that it defeats the objective component of Plaintiff's Eighth Amendment claim. We also view this lack of evidence as failing to establish that the ETS level did endanger Plaintiff's health. The plaintiff in *Helling* was confined in a cell with an inmate who smoked five packs a day. Here, Plaintiff would have been exposed to ETS only in the common areas; he had his own cell. Such ETS exposure does not

9

automatically translate into an unreasonably high level for Eighth Amendment purposes. *See Pryor-El v. Kelly*, 892 F. Supp. 261, 267 (D.D.C. 1995). As Defendants also point out, the medical evidence shows that Jordan's asthma is not considered life-threatening or severe. We also reject Plaintiff's contention, relying on *Beeson v. Johnson*, 668 F. Supp. 498 (E.D.N.C. 1987, *rev'd on other grounds*, 894 F.2d 401 (4th Cir. 1990)(text in Westlaw at 1990 WL 2330), that his own testimony can supply the necessary link between his asthma and the ETS.

Based on the foregoing, we reject the arguments made in Plaintiff's motion for summary judgment that Defendants were deliberately indifferent by failing to correct the ventilation system in D Block or in failing to honor his request for a transfer to another block.

Although Defendants did not argue it, we also think that Plaintiff has failed on the subjective component of an Eighth Amendment claim. "Prisoner officials all over the country have struggled to accommodate the growing evidence that ETS is harmful and may subject them to liability." *Oliver, supra*, 77 F.3d at 157. In our view, the Rockview 1994 smoking policy, rather than showing deliberate indifference, as Plaintiff has argued, establishes that prison officials were attempting to meet their constitutional obligations involving ETS. To be sure, the policy permitted smoking in inmate housing areas, but it was later revised so that ultimately all prisoners were prohibited from

10

smoking, thereby significantly reducing any health risk. The existence of these policies militates against a finding of deliberate indifference. *See Helling, supra*, 509 U.S. at 36, 113 S.Ct. at 2482 (adoption of a smoking policy bears heavily on the inquiry into deliberate indifference).

As to injunctive, relief, we decline to grant that as well. The establishment of the November 2002 Rockview policy barring all prisoners from smoking while in prison or purchasing tobacco products there counsels against it.

Finally, we reject Plaintiff's attempt to assert a substantive due process claim under a state-created danger theory. *See Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). Since Plaintiff's claim is covered by the Eighth Amendment, he cannot assert a claim under any other constitutional provision. *See County of Sacramento v. Lewis*, 523 U.S. 840, 841-42, 118 S.Ct. 1708, 1714-15, 140 L.Ed.2d 1043 (1998).

We will issue an appropriate order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: February 14, 2003